IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RALPH FAYSON,

    Petitioner,

v.                                                              CASE NO. 1:09-cv-116-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Alachua County jury-trial conviction for first degree murder, for which he received a sentence of life imprisonment. In his Petition, Petitioner raises two claims of ineffective assistance of counsel. Respondent filed a response contending that the Petition should be denied on the merits, Doc. 13, and Petitioner filed a Reply. Doc. 17. Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## State Court Proceedings

    This case involves the murder of Crystal Grant (the "victim"). The victim's mother, Cheryl Boston, testified at Petitioner's trial she runs a group home for mentally challenged adults and her daughter, the victim, was employed at the group home. Respondent's Appendix Exhibit ("Exh.") C at 174, 178-79. At the time of her death, the

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

victim was involved in a romantic relationship with the Petitioner. *Id.* at 178.

On the morning of May 15, 2004, Petitioner dropped the victim off at the group home between 5:30 and 6:00 a.m. *Id.* at 179, 181-82. The victim was returning from work at 11:00 a.m. when she ran into a friend, Christopher Mooney, and Jeremy Castlen, a friend of Mr. Mooney's, as she pulled into the Fox Hollow apartments, the Gainesville apartment complex where she lived. *Id.* at 174, 178-79. Castlen and Mooney invited the victim to a pool party later that day at the Fox Hollow pool and asked the victim if she would take them to a nearby grocery store to get some supplies for the party. *Id.* at 202. On the way back from the grocery store, the three stopped to buy $20 worth of marijuana from someone the victim knew. *Id.* at 203.

When the three returned from the grocery store, the victim spotted Petitioner's vehicle in front of her apartment. *Id.* at 206. Mooney testified the victim seemed "like she was worried'" when she spotted Petitioner's car in front of her apartment. *Id.* at 240. Castlen, Mooney and the victim entered the victim's apartment through the front door, which was unlocked, and discovered Petitioner inside. *Id.* at 206. Castlen testified Petitioner appeared "buzzed," while Mooney testified the Petitioner "seemed like he was upset." *Id.* at 206, 240. The parties then went their separate ways but later reconvened at the Fox Hollow pool for the pool party.

As the pool party was winding down, Castlen made arrangements with the victim to purchase more marijuana after the pool party and gave her $20 for the marijuana. *Id.* at 209. Around 3:00 or 3:30 p.m., the victim left the pool party in order to shower and change before she and Castlen were to leave to obtain the marijuana. *Id.* Castlen went back to his own apartment for 40-45 minutes to give the victim time to shower and

change before knocking on the door of the victim's apartment. *Id.* at 209-10. Petitioner answered the door and said the victim was "not going anywhere, we have unfinished business to take care of." *Id.* at 210-11. Castlen testified Petitioner appeared "A little kind of like nervous, but pissed" when Petitioner answered the door of the victim's apartment. *Id.* at 211. Approximately thirty minutes later Castlen and Mooney saw the Petitioner leaving Fox Hollow so quickly his tires were squealing and he ran through several stop signs. *Id.* at 211-13, 245-46. After Petitioner left in a rush, Castlen and another friend, Brad DeMoss, walked over to the victim's apartment and knocked on her door three separate times, but no one answered. *Id.* at 213-14.

The victim's mother testified at Petitioner's trial that the victim was scheduled to work the following morning, May 16, 2004, but she never showed up for work that day or the following day. *Id.* at 182. Ms. Boston visited the victim's apartment on both May 17 and May 18, 2004 and knocked very loudly on the door, but no one answered, despite the fact the victim's car was parked in front of the apartment. *Id.* at 183-86. On May 19, 2004 the victim's mother spoke with Petitioner on the telephone regarding the victim's whereabouts, who said he had been to the victim's apartment every day but he had not seen her. *Id.* at 186. The victim's mother also testified the victim had told her two weeks prior to her death that the victim was planning on breaking up with Petitioner. *Id.* at 187.

Juan Jenkins also testified at Petitioner's trial. Mr. Jenkins also was involved in a romantic relationship with the victim beginning in approximately April 2004. *Id.* at 552-53. One evening in early May 2004, Mr. Jenkins spent the night at the victim's apartment. *Id.* at 554. As he was leaving the victim's apartment the next morning, the victim saw Petitioner waiting in his van outside her front door, causing the victim, in Mr.

Jenkin's words, to look like she had seen a ghost.  *Id.* at 555, 557.  Petitioner began yelling that he had "caught" the victim and then he started his car and left the Fox Hollow parking lot.  *Id.* at 555-56. Later that day the victim called Jenkins on his cell phone and she was "hysterical" while Mr. Jenkins recognized the sound of Petitioner yelling at her in the background.  *Id.* at 557-58.

The victim's body was discovered in one of the bedrooms in her apartment on May 21, 2004 by Fox Hollow staff conducting a well-being check.  *Id.* at 288-93.  The apartment staff immediately called the Alachua County Sheriff's Office and Sheriff's Office personnel, upon responding to the call, discovered several pieces of hair laying on the hallway floor and the victim's decomposing body and several additional clumps of hair in the bedroom.  *Id.* at 427, 430, 434.  A small amount of sperm was found on the victim's sheets, which DNA testing later confirmed had come from Petitioner.  *Id.* at 588-89.  An autopsy performed on May 23, 2004 reflected the victim died of stab wounds to her neck, one of which severed an artery and resulted in her bleeding to death.  *Id.* at 621-22, 636.  The victim also had experienced blunt force trauma to her left eye, her lips, chin and neck, consistent with having been struck by someone's fists in those areas.  *Id.* at 622-27, 648.  Her hands also had cut wounds and one of her fingernails had been ripped off, indicative of a struggle before the victim died.  *Id.* at 636, 645.

Shanita Hill, who was previously Petitioner's on and off girlfriend prior to Petitioner's relationship with the victim, testified at trial that Petitioner had called her out of the blue several days after the victim's murder and said "that he might be involved in a murder."  *Id.* at 608-11.  After the victim's body was discovered, law enforcement officers came to Ms. Hill's apartment to interview her and, while the officers were arriving at her

apartment to conduct the interview, she saw the Petitioner drive by her apartment in his van.  *Id.* at 610-11.  Soon afterward, Petitioner called Ms. Hill while she was being interviewed by law enforcement and told her to "remember nothing about the past."  *Id.* at 612.  The next day law enforcement came back to Ms. Hill's apartment to interview her again and, after they left, Petitioner came to her apartment and asked Ms. Hill to tell him what questions law enforcement had asked her.  *Id.* at 613-14.  When Ms. Hill told Petitioner she wanted no part of the situation, the Petitioner became angry and raised his voice at Ms. Hill.  *Id.* at 613-14.

Petitioner also was interviewed by law enforcement on May 23, 2004.  *Id.* at 666.  Petitioner told law enforcement officers he met the victim in March 2004 through a friend.  *Id.* at 683-84. During his interview, Petitioner told the officers the victim was "just a girl that he was seeing" and not his "main lady," whose name was Shirley Hudson, or his "main main lady," whose name was Andrailya Bishop.  *Id.* at 671, 684-86.

Petitioner was arrested on June 3, 2004 in connection with the victim's death.  Exh. A at 1-3.  Petitioner was then charged with first degree murder in a criminal indictment returned in the Circuit Court for the Eighth Judicial Circuit in Gainesville, Florida (the "state court") on June 22, 2004.  *Id.* at 7-8.

Petitioner's trial commenced on September 7, 2005.  Exh. C.  At Petitioner's trial, several witnesses testified Petitioner had a history of violence towards the women he dated.  Colemiko McCallum, one of the victim's friends, testified at trial that, on an April 2004 visit to the victim's apartment, she had witnessed the Petitioner attack the victim from behind, choke the victim, and then drag her by the neck into the bedroom.  *Id.* at 275-77.

One of Petitioner's ex-girlfriends, Lanu Perosi, also testified at trial. *Id.* at 534. Ms. Perosi testified she had dated Petitioner for about seven months in 1994. *Id.* at 534-55. Ms. Perosi testified Petitioner unexpectedly showed up to her apartment at approximately 10:00 p.m. on August 26, 1994 even though she had broken up with him three weeks earlier. *Id.* at 535-38. She did not let Petitioner in, but Petitioner forced his way into Ms. Perosi's apartment and then pushed the apartment door closed, locked it and stood in front of the door to prevent her from leaving. *Id.* at 538. Petitioner called her names, pushed and shoved her, and hit her in the face with his fists. *Id.* at 538-39. Petitioner also threatened to kill Ms. Perosi, telling her she was "nothing" and she did not "deserve to live." *Id.* at 539. Petitioner hit Ms. Perosi in the head with a beer bottle and he took a knife from her kitchen and held it against her neck, threatening to stab Ms. Perosi if she moved. *Id.* at 540. Petitioner dragged Ms. Perosi to another part of the apartment by her hair and stabbed her in the neck with the knife, which left a scar on her neck. *Id.* at 541-42. Ms. Perosi also testified there was tension between her brother and the Petitioner prior to the August 26, 1994 incident because Petitioner physically beat her quite frequently. *Id.* at 548-49.

The jury found Petitioner guilty of first degree murder on September 8, 2005. Exh. A at 782-83. Petitioner was sentenced to life imprisonment and judgment was entered that same day. *Id.* at 785-88. Petitioner filed a Notice of Appeal on September 9, 2005. *Id.* at 795-96, Exh. I. The state filed a notice of cross-appeal of the state court's order denying the victim's mother from being present in the courtroom during Petitioner's trial as well as a pretrial order denying the state's motion to compel reciprocal disclosure of discovery materials. Exh. A at 800-01.

In his initial brief on appeal to the First District Court of Appeal, Petitioner argued the trial court erred (i) by denying his motion for a judgment of acquittal where the evidence of his guilt was purely circumstantial; (ii) in allowing the testimony of Lanu Perosi as to Petitioner's 1994 attack on her and allowing the testimony of Colemiko McCallum as to Petitioner's April 2004 attack on the victim; and (iii) in restricting the scope of cross-examination it permitted Petitioner's counsel at trial of the sheriff's deputy who interrogated Petitioner at his initial interview with law enforcement after the victim's death.  Exh. I.  On cross-appeal the state argued the state court erred in (i) not compelling the defense to produce a copy of the transcript from a deposition Lanu Perosi gave in an unrelated legal proceeding and (ii) excluding the victim's mother from the courtroom during Petitioner's trial.  Exh. J.  Petitioner's conviction was affirmed *per curiam* without a written opinion by the First District Court of Appeal in April 2007.  Exh. L.

Petitioner then filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 asserting five grounds of ineffective assistance of counsel.  Exh. M at 1-44.  Petitioner filed a supplemental motion for postconviction relief on December 10, 2007 in which he asserted the two grounds raised in the instant Petition: (i) his trial counsel was ineffective for waiving Petitioner's speedy trial rights without Petitioner's consent and (ii) the trial court erred in granting a second motion to continue Petitioner's trial after a previous motion to continue had been denied by a different judge two weeks before the continuance was granted.  *Id.* at 45-52.  On March 3, 2008 the state court denied Petitioner's Rule 3.850 motion on the merits and denied his supplemental motion on the grounds it did not meet the oath requirements of Fla. R. Crim. P. 3.850(c).  *Id.* at 58-63.

The order twice dismissed the supplemental motion without prejudice to Petitioner's ability to refile the supplemental motion with a proper oath. *Id.* at 63.

Petitioner refiled his supplemental motion for postconviction relief on March 25, 2008 and asserted two grounds for relief: (i) his trial counsel was ineffective for waiving Petitioner's speedy trial rights without Petitioner's consent and (ii) the trial court erred in granting a second motion to continue Petitioner's trial after a previous motion to continue had been denied by a different judge two weeks beforehand. *Id.* at 236-41. In ruling on ground (i), the state court applied *Strickland v. Washington* and noted the following:

> As to ground (A), Defendant alleges that trial counsel was ineffective for waiving his right to a speedy trial without his consent. On November 24, 2004, defense counsel notified the trial court that he wished to join the State's motion for a continuance. *See* Trial Status Conference Transcript at 2 (line 7-25)- 7 (lines 1-6). The record reflects that prior to that point defense counsel was preparing for a speedy trial; but, given the number of State witnesses in the case, when the time for trial came counsel was not adequately prepared. *See* Pre-trial Conference Transcript at 2 (lines 17-25) -4 (lines 1-6); Hearing (11/19/2004) Transcript at 4 (lines 7-25) - 19 (lines 1-14), 25 (lines 17-25) - 26 (lines 1-4); Trial Status Conference Transcript at 4 (lines 3-25), 6 (lines 19-25) - 7 (lines 1-4); Case Management Conference (1/25/2005) at 9 (lines 3-25) - 11 (lines 1-6). Based on counsel's waiver, Defendant moved to represent himself, which the court granted. *See* Case Management Conference (1/25/2005) Transcript at 22 (lines 1-5). Then, on the day of trial, Defendant asked for counsel to be reappointed. *See* Motion Hearing (9/02/2005) Transcript at 41 (lines 18-21).
>
> Thus, ultimately, even Defendant himself was unwilling to go to trial unprepared. Though Defendant alleges that counsel's waiver was error, the record reflects otherwise. Counsel clearly was not prepared for trial on November 24, 2004. According to defense counsel, despite their diligent preparation, Defendant would have been prejudiced at the ensuing trial had they not moved for a continuance. *See* Trial Status Conference Transcript at 4 (lines 21-25), 6 (lines 16-25) - 7 (lines 1-4). Because counsel had a reasoned basis to move for a continuance, counsel did not err by waiving Defendant's right to a speedy trial. *See Ford v. State*, 955 So. 2d 550, 556 (Fla. 2007)("[b]oth attorneys testified that they would not have been able to present the substantial defense they did if they were forced to comply with the speedy trial time frame given the complex nature of the case and evidence involved"). This claim is without merit.

*Id.* at 243-44. The state court then denied the second ground on the basis it was procedurally barred because Petitioner had failed to raise it on direct appeal. *Id.* at 244.

Petitioner appealed the state court's denial of both his original Rule 3.850 motion and his supplemental motion for postconviction relief to the First District Court of Appeal. *Id.* at 298-300. The state court's denial of both the original Rule 3.850 motion and the supplemental motion for postconviction relief were affirmed *per curiam* without a written opinion by the First District Court of Appeal in April 2009. Exhs. O, P, Q.

Petitioner then filed the instant federal habeas petition on May 7, 2009, which Respondent concedes is timely. Doc. 1. Petitioner asserts two grounds: (i) his trial counsel was ineffective for waiving Petitioner's right to a speedy trial without his consent and (ii) trial counsel was ineffective for failing to object to the state court's granting of a second motion for a continuance of Petitioner's trial despite the denial of an identical motion by a different judge of the state court two weeks beforehand. Respondent concedes Petitioner's claims are exhausted but urges the Court to deny the Petition on the merits. Doc. 13. As explained below, it is clear that Petitioner is not entitled to relief on the merits of either of his habeas claims.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor*] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

## Ineffective Assistance of Counsel

Because Petitioner's claims raise the issue of his trial counsel's effectiveness, a review of *Strickland v. Washington* is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter,* ___ U.S. ___, 131 S.Ct. 770, 786 (2011). The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of §

2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## **Petitioner's Claims**

Upon an independent review of the trial record and the state court's disposition of these claims on postconviction review, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's claims, the Court concludes that Petitioner has presented no basis for federal habeas relief.

**(1)   Petitioner's Ineffective Assistance Claim Based Upon a Purported Waiver of His Speedy Trial Rights Is Without Merit**

The first ground for relief presented in the Petition concerns Petitioner's speedy trial rights. Petitioner contends his trial counsel was ineffective because counsel waived Petitioner's speedy trial rights without Petitioner's consent. This claim is without merit.

Petitioner asserts he was denied his right to effective assistance of counsel because his trial counsel agreed to a continuance of Petitioner's trial at a state court hearing on November 24, 2004 without Petitioner's consent. Petitioner argues the state was not prepared to go ahead with his trial as originally scheduled on November 29, 2004. Petitioner bases this argument on the state's four unsuccessful attempts to depose, in Petitioner's words, its "star witness" Lanu Perosi due to her failure to show up for several previously scheduled depositions. Petitioner suggests that the charges against him would have been discharged had his counsel not agreed to the continuance.

In ruling on ground (i), the state court applied *Strickland v. Washington* and noted the following:

> As to ground (A), Defendant alleges that trial counsel was ineffective for waiving his right to a speedy trial without his consent. On November 24, 2004, defense counsel notified the trial court that he wished to join the State's motion for a continuance. *See* Trial Status Conference Transcript at 2 (line 7-25)- 7 (lines 1-6). The record reflects that prior to that point defense counsel was preparing for a speedy trial; but, given the number of State

> witnesses in the case, when the time for trial came counsel was not adequately prepared. *See* Pre-trial Conference Transcript at 2 (lines 17-25) - 4 (lines 1-6); Hearing (11/19/2004) Transcript at 4 (lines 7-25) - 19 (lines 1-14), 25 (lines 17-25) - 26 (lines 1-4); Trial Status Conference Transcript at 4 (lines 3-25), 6 (lines 19-25) - 7 (lines 1-4); Case Management Conference (1/25/2005) at 9 (lines 3-25) - 11 (lines 1-6). Based on counsel's waiver, Defendant moved to represent himself, which the court granted. *See* Case Management Conference (1/25/2005) Transcript at 22 (lines 1-5). Then, on the day of trial, Defendant asked for counsel to be reappointed. *See* Motion Hearing (9/02/2005) Transcript at 41 (lines 18-21).
>
> Thus, ultimately, even Defendant himself was unwilling to go to trial unprepared. Though Defendant alleges that counsel's waiver was error, the record reflects otherwise. Counsel clearly was not prepared for trial on November 24, 2004. According to defense counsel, despite their diligent preparation, Defendant would have been prejudiced at the ensuing trial had they not moved for a continuance. *See* Trial Status Conference Transcript at 4 (lines 21-25), 6 (lines 16-25) - 7 (lines 1-4). Because counsel had a reasoned basis to move for a continuance, counsel did not err by waiving Defendant's right to a speedy trial. *See Ford v. State*, 955 So. 2d 550, 556 (Fla. 2007)("[b]oth attorneys testified that they would not have been able to present the substantial defense they did if they were forced to comply with the speedy trial time frame given the complex nature of the case and evidence involved"). This claim is without merit.

Exh. M at 243-44.

The state court correctly applied *Strickland* and concluded this claim had no merit. To begin with, Petitioner's counsel was not ineffective in purportedly waiving his right to a speedy trial without Petitioner's consent. Under Florida law defense counsel may waive a criminal defendant's speedy trial rights without first consulting the defendant, may do so outside of the defendant's presence and may even do so against the defendant's wishes. MacPhee v. State, 471 So. 2d 670, 671 (Fla. Dist. Ct. App. 1985)(noting "a defense attorney may waive speedy trial on his client's behalf without consulting him and without his presence"). Petitioner's counsel thus was not ineffective just because he waived Petitioner's right to a speedy trial, and the state court correctly concluded there was no deficient performance under *Strickland* in connection with this continuance.

*Case No: 1:09-cv-116-MP-GRJ*

As the state court also properly concluded, Petitioner did not suffer prejudice in connection with his counsel's waiver of Petitioner's speedy trial rights.  Petitioner's counsel was unprepared for trial when a continuance was discussed at the November 24, 2004 hearing, which would have prejudiced Petitioner's ability to mount a defense.  Petitioner's counsel stated on the record at that hearing that the defense had only deposed 27 of 50 witnesses as of the hearing date, two of whom were extremely important *Williams* rule[2] witnesses.  Exh. M at 253-55.  Petitioner's defense counsel went so far as to say that not waiving speedy trial would "truly prejudice" Petitioner's case at trial.  *Id.* at 255.  To that same end Petitioner's co-counsel told the court: "But certainly, at this level of preparation I don't want to tell this Court that we're prepared to go to trial, especially in a case of this magnitude, given the witnesses that still need to be deposed and the level of investigation that has not been able to occur, in spite of our diligence."  *Id.* at 257-58.  The state court thus did not err in its resolution of this ground.  Petitioner did not suffer prejudice because his counsel would have been unprepared to mount a defense in the event the case went to trial on November 29, 2004 as originally scheduled.

This Court's resolution of this first ground is well-supported by several previous decisions of this Court and other federal district courts.  This Court previously has rejected identical ineffective assistance claims advanced by section 2254 petitioners where defense counsel waived a petitioner's speedy trial rights against the petitioner's wishes.  *Abney v.*

---

[2] Under Florida law, similar fact evidence of other crimes, wrongs, or acts which is referred to as  *Williams* Rule evidence, "is admissible when relevant to prove a material fact in issue," such as motive, intent, preparation or plan.  FLA. STAT. § 90.404(2)(a).  The *Williams* Rule witnesses Petitioner's counsel referred to were Lanu Perosi, who testified about a severe beating Petitioner gave her in 1994, and Colemiko McCallum, who testified she witnessed Petitioner beat the victim in April 2004.

*Buss*, No. 5:08-cv-307-MCR-EMT, 2011 WL 2712638, at *8-*13 (N.D. Fla. Apr. 6, 2011); *Lowery v. Cummings*, No. 3:05–cv-303-LAC-MD, 2006 WL 2361929, at *7-*11 (N.D. Fla. July 17, 2006). Federal courts in other districts considering *Strickland* claims similar to Petitioner's first ground in the Petition also have rejected such claims. *See*, *e.g.*, *Matthews v. Sheets*, No. 1:08–cv–742, 2010 WL 537002, at *24 (S.D. Ohio Feb. 11, 2010)(rejecting section 2254 petitioner's ineffective assistance claim his trial counsel waived time for purposes of the state speedy trial statute without petitioner's consent and noting Ohio state law permits a counsel to waive a defendant's speedy trial rights without the defendant's consent).

Furthermore, to the extent the Petition may be liberally construed as asserting a claim that Petitioner's counsel failed to protect his federal speedy trial rights under the Sixth Amendment, Petitioner has made no showing that he is entitled to federal habeas relief. The test for adjudicating a Sixth Amendment speedy trial claim requires a balancing of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972); *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992). When the delay between arrest or indictment and trial is more than one year, there is a presumption of prejudice sufficient to trigger application of the four part test as a whole. *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992).

Petitioner was arrested on June 3, 2004, indicted on June 22, 2004, and his trial commenced on September 7, 2005, more than one year after both arrest and indictment. Exh. A at 1-3, 7-8. Therefore, there is presumed prejudice under *Doggett*. In examining the length and the reasons for the delay, however, the Court concludes that the delay was

caused by the need by Petitioner's counsel for more time to prepare Petitioner's defense, as discussed above. Similarly, the Court concludes that rather than causing the Petitioner prejudice the delay actually allowed his counsel to complete preparation of Petitioner's defense for trial. Accordingly, Petitioner has not shown that his trial counsel performed deficiently in connection with his federal constitutional right to a speedy trial.

Accordingly, for the reasons discussed above, the first ground presented in the Petition is without merit and Petitioner is not entitled to federal habeas relief on this ground.

### (2) Petitioner's Ineffective Assistance Claim Regarding Counsel's Failure to Object to the Granting of Continuance Is Without Merit

The second ground for relief Petitioner presents in the Petition is that his trial counsel was ineffective for failing to object when Circuit Judge Peter K. Sieg – the judge who presided over the November 24, 2004 hearing – continued the November 29, 2004 trial. A different state court judge, Circuit Judge Larry G. Turner, previously had denied the state's motion for a continuance of the trial two weeks before Judge Sieg continued Petitioner's trial. Petitioner suggests that Judge Sieg somehow violated principles of either *res judicata* or collateral estoppel in continuing his trial and that Petitioner's trial counsel was ineffective in failing to object to Judge Sieg's ruling.

Petitioner advanced a similar argument in his supplemental motion for postconviction relief in the state court, in which he argued the state court erred in granting the motion for a continuance. Exh. M at 236-41. The state court considered this second ground and, in denying relief, noted the following:

> "As to ground (B), Defendant alleges that the trial court erred by ruling on the State's renewed motion to continue the trial. 'Claims that could have been brought on direct appeal are procedurally barred in postconviction proceedings." *Willacy v. State*, 967 So. 2d 131, 141 (Fla. 2007)(citing *Harvey v. Dugger*, 656 So. 2d 1253, 1256 (Fla. 1995)). "Postconviction proceeding

> cannot be used as a second appeal.' *Id.* (quoting *Swafford v. Dugger*, 569 So. 2d 1264, 1267 (Fla. 1990)). Because the instant claim could have been raised on direct appeal, it is procedurally barred."

Ex. M at 244.

This second ground for relief has no merit.  Petitioner has not demonstrated any facts which would suggest the state court's determination that Petitioner failed to exhaust this ground for relief was in error.  His direct appeal did not contain any grounds remotely connected to the motion for a continuance.  Exh. I.

Furthermore, Petitioner's arguments in support of the second ground for relief in the Petition are factually incorrect.   On October 22, 2004 state court judge Larry G. Turner denied the state's motion for a continuance of the November 29, 2004 trial date.  Exh. A at 20-26.  When the prosecution attempted to renew the motion to continue at the November 24, 2004 hearing, Judge Sieg  stated he would not reverse Judge Turner's earlier determination unless the prosecution could present new grounds justifying the requested continuance.  Exh. M at 254.  Judge Sieg granted the continuance when Petitioner's counsel joined the state's motion to continue on the grounds that the Petitioner's counsel was unprepared for trial and Petitioner would be prejudiced if the case went to trial on November 29, 2004.  *Id.* at 254-60.  Petitioner's counsel specifically noted the defense had opposed the state's first motion to continue the trial because, as of November 19, 2004, Petitioner's counsel and co-counsel felt prepared for trial.  *Id.* at 254.   Petitioner's counsel further noted, however, they no longer felt prepared to go to trial as of the November 24, 2004 hearing.  *Id.*

Petitioner's counsel was not ineffective under *Strickland* for failing to object to a motion Petitioner's own counsel joined because counsel needed to depose additional

*Case No: 1:09-cv-116-MP-GRJ*

witnesses.  Moreover, putting aside whether Petitioner's counsel should have objected rather than joining in the motion, Petitioner did not suffer any prejudice under *Strickland* because his counsel needed to take additional depositions to prepare for trial. Simply put, Petitioner would have been prejudiced had the case gone to trial as originally scheduled. Accordingly, the second ground for relief presented in the Petition is also without merit.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By A Person In State Custody, Doc. 1, should be **DENIED,** and that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 31st  day of May 2012.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.